**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| VINCENT GLAZEWSKI, | : | |
| | : | Civil Action No. 06-4107 (KSH) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| JON CORZINE, et al., | : | |
| | : | |
| Defendants. | : | |

**KATHARINE S. HAYDEN**, U.S.D.J.

Plaintiff Vincent Glazewski, a prisoner confined at Northern State Prison in Newark, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I. BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff is a non-smoker.  On December 9, 2003, Plaintiff was transferred to Northern State Prison and was placed into a cell with a smoker.  He has almost continuously since that date been placed into cells with smokers.

In addition, because of the allegedly filthy conditions at Northern State Prison, Plaintiff contracted a flesh-eating bacteria (MRSA or `Methicillin-resistant Staphylococcus aureus`).  As a result of this infection, Plaintiff was admitted to the infirmary where he remained for 28 days.  While in the infirmary, Plaintiff was not able to use the telephone, mail letters, or buy anything from the prison commissary.

On January 9, 2006, Plaintiff wrote a letter to Governor Corzine to complain about exposure to environmental tobacco smoke on his unit and in his cell, where he continued to be double-bunked with a smoker.  Shortly thereafter, Plaintiff experienced a series of moves around the prison, repeatedly being double-bunked with smokers and repeatedly being assigned to the top bunk despite medical orders to be assigned to a lower bunk.  Plaintiff wrote several letters to Defendant Administrator Lydell Sherrer to complain about this conduct, which he perceived as retaliatory for his letter to the Governor.

Defendants Lydell Sherrer and Dean Yatauro visited Plaintiff in his cell to question him about his letter to Governor Corzine.  Defendant Sherrer ordered correctional officers to search Plaintiff's cell and confiscate his property, suspended him from his institutional work assignment, banned him from the educational area, and advised Plaintiff that if he complained again he would be moved around the prison

again. Plaintiff's cell was subjected to several searches, in one of which his prescription medication for leukemia was strewn about the floor.

Plaintiff also complains that the prison conditions in general violate the Eighth Amendment. Specifically, Plaintiff complains about exposure to environmental tobacco smoke, generally dirty conditions, unhealthful food, overcrowding and double-bunking, denial of clean clothing and sheets, denial of regular showers, denial of toilet paper, inadequate access to the law library, inadequate access to medical treatment, and inadequate access to vocational, recreational, and educational programs.

Plaintiff has sued Governor Jon Corzine, and former Attorney General Peter Harvey. Plaintiff has also sued Commissioner of Corrections George Hayman, Director of Operations James F. Barbo, Northern State Prison Administrator Lydell Sherrer, Associate Administrator Angel Santiago, Sr., Assistant Superintendent Erik Stokes, Chief of Custody Dean Yatauro, Senior Special Investigator Randy Cicale, Administrator of Investigations Joseph L. Trapp, State Investigator for Prison Complaints Steven La Penta, First Shift Lieutenant Dunn, Second Shift Lieutenant Simpkins, First Shift Housing Sergeant James, Second Shift Housing Sergeant Chanda, Corrections Officer G.L. Cook, Corrections Officer Gamble, Corrections Officer Jackson, Corrections Officer Tweet, Corrections Officer Wingo, Corrections Officer Frazier, Corrections Officer Davis, Corrections Officer Williams, Corrections Officer Thompson, Corrections Officer Fate, and various Jane and John Does, collectively referred to herein as "the Corrections Defendants."

Plaintiff seeks declaratory relief and injunctive relief prohibiting smoking in his unit, including in the individual cells, improving the conditions complained of, and

reinstating him at his institutional work assignment with back pay and work credits. Plaintiff also seeks compensatory and punitive damages.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights.   Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state

law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## IV.  ANALYSIS

A.   Failure to Investigate/Prosecute

Plaintiff alleges that he informed former Attorney General Peter Harvey of the alleged violations of his rights, but that the Attorney General failed to investigate or enforce the law.

"'[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim.'" Graw v. Fantasky, 68 Fed.Appx. 378, 2003 WL 21523251 (3d Cir. 2003) (unpubl.) (quoting unpubl. District Court opinion) (citing DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195-96 (1989)).  Cf. Burnside v. Moser, 138 Fed.Appx. 414, 416, 2005 WL 1532429 (3d Cir. 2005) (prisoners do not have a constitutionally protected right to a prison grievance process); Lewis v. Williams, 2006 WL 538546, *7 (D. Del. 2006) (failure to investigate a grievance does not raise a constitutional issue) (collecting cases).  Moreover, "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973).  See also Leeke v. Timmerman, 454 U.S. 83, 85-87 (1981) (in general, a private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another).  Thus, the claims against the former Attorney General must be dismissed.

B.   Retaliation Claims

6

To prevail on a retaliation claim, a plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  Rauser v. Horn, 2001 WL 185120 (3d Cir. 2001) (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.

    1.    Discharge from Work Assignment

Plaintiff contends that he was discharged from his prison work assignment, depriving him of work credits that could otherwise be applied to lessen his incarceration time, in retaliation for his having written to Governor Corzine to complain about conditions at Northern State Prison.  See N.J.S.A. 30:4-92.  He seeks reinstatement to his institutional work assignment with back pay and work credits.   (Complaint, ¶ 112.) Plaintiff also seeks compensatory and punitive damages.

In a series of cases beginning with Preiser v. Rodriguez, 411 U.S. 475 (1973), the Supreme Court has analyzed the intersection of 42 U.S.C.§ 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254.  In Preiser, state prisoners who had been deprived of good-conduct-time credits by the New York State Department of Correctional Services as a result of disciplinary proceedings brought a § 1983 action seeking injunctive relief to compel restoration of the credits, which would have resulted in their immediate release.  411 U.S. at 476.  The prisoners did not seek

compensatory damages for the loss of their credits.  411 U.S. at 494.  The Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  Id. at 500.

In Heck v. Humphrey, 512 U.S. 477 (1994), the Court addressed a corollary question to that presented in Preiser, whether a prisoner could challenge the constitutionality of his conviction in a suit for damages only under § 1983, a form of relief not available through a habeas corpus proceeding.  Again, the Court rejected § 1983 as a vehicle to challenge the lawfulness of a criminal judgment.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87 (footnote omitted).  The Court further instructed district courts, in determining whether a complaint states a claim under § 1983, to evaluate whether a favorable outcome would necessarily imply the invalidity of a criminal judgment.

> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted).   The Court further held that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated."   Id. at 489-90.

"Considering Heck and summarizing the interplay between habeas and § 1983 claims, the Supreme Court recently explained that, 'a state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - if success in that action would necessarily demonstrate the invalidity of the confinement or its duration.'"   Williams v. Consovoy, 453 F.3d 173, 177 (3d Cir. 2006) (quoting Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005)) (emphasis in original).

Here, Plaintiff expressly requests reinstatement of his work credits, a result that would directly affect the duration of his confinement.   This claim, for declaratory and injunctive relief and damages, is barred by the Preiser/Heck line of cases until such time as the prison proceeding is otherwise invalidated through appropriate state proceedings or a federal habeas proceeding under 28 U.S.C. § 2254 following exhaustion of state remedies.

    2.        Retaliatory Conditions

Plaintiff also contends that, in retaliation for his letter to Governor Corzine, he has been subjected to frequent cell moves, double-bunking with smokers, assignments to upper bunks, searches, and confiscation and destruction of his property.   He names defendants Lydell Sherrer and Dean Yatauro as the defendants responsible for these

allegedly retaliatory actions.   Plaintiff adequately alleges the elements of a retaliation claim: (1) that he engaged in the constitutionally-protected activity of contacting the Governor about prison conditions, (2) that he suffered, at the hands of state actors, adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) that the protected activity of contacting the Governor was a substantial or motivating factor in the state actors' decisions to take adverse action.  This claim will be permitted to proceed against defendants Sherrer and Yatauro.[1]

C.   Conditions Claims

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes.  Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).  This proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993).  It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Id. at 31.

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component. Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component mandates

---

[1] To the extent Plaintiff contends that other defendants took retaliatory actions against him, he may amend the complaint to identify those defendants and the retaliatory actions taken by them.

that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation."  Helling v. McKinney, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at 346).  This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm.  See Farmer v. Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

A plaintiff may satisfy the objective component of a conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety.  Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992).  However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons."  Rhodes, 452 U.S. at 349.  To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society.  Id. at 347.  An inmate may fulfill the subjective element of such a claim

by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).

    1.    General Prison Conditions

Plaintiff alleges generally unconstitutional conditions of confinement, including **exposure to environmental tobacco smoke, generally dirty conditions, unhealthful food, overcrowding and double-bunking, denial of clean clothing and sheets, denial of regular showers, denial of toilet paper, and inadequate access to vocational, recreational, and educational programs.** The allegations are sufficient to meet the requirements as to the objective element of a claim for unconstitutional conditions of confinement in violation of the Eighth Amendment.

With respect to the subjective element, Plaintiff alleges that he notified the Governor and the Corrections Defendants of the "problems" at the institution and that they failed to take corrective action. Thus, he has alleged personal knowledge on the part of these defendants. The Eighth Amendment conditions-of-confinement claim, as construed herein, will be permitted to proceed. See, e.g., Brown v. Budz, 398 F.3d 904, 917 (7th Cir. 2005) (allowing discovery to determine the scope of duties of various corrections officials, including supervisors and investigators, alleged to have violated prisoner's constitutional rights). Compare Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal

12

involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.   Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.") (citations omitted).

    2.    Claim of Inadequate Medical Treatment

Plaintiff alleges that sometimes prison personnel do not open the cell door for him to go to medical appointments and that his medical care is otherwise inadequate.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.   Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).   In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.   Id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious.   "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"   Hudson v. McMillian, 503 U.S. 1, 9 (1992).   Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.   Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.2d at 110.

"Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met. ... Finally,

deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted). "Short of absolute denial, 'if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out." Id. (citations omitted). "Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'" Id. at 347 (citation omitted). Compare Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (summary judgment properly granted to prison warden and state commissioner of corrections, the only allegation against whom was that they failed to respond to letters from prisoner complaining of prison doctor's treatment decisions) with Sprull v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (a non-physician supervisor may be liable under § 1983 if he knew or had reason to know of inadequate medical care).

Here, Plaintiff's allegation that he suffers from leukemia is sufficient to meet the objective element of a serious medical condition. Also, the allegation that prison officers refuse to open his cell door to permit him to go to scheduled medical appointments is a sufficient allegation of deliberate indifference. Although Plaintiff does not identify the officers who refused to open his cell door to permit him to go to medical appointments, he again states that he has notified the Governor and the Corrections Defendants of the "problems" and that none have taken corrective action. This is a sufficient allegation of deliberate indifference to avoid dismissal at this screening stage of the litigation.

### 3. Claim of Inadequate Access to Law Library

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances. Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983). In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). See also Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The right of access to the courts is not, however, unlimited. "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original).

There is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. ... [T]he

inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim." Lewis, 518 U.S. at 351. Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury." See Lewis, 518 U.S. at 348-55 and n.3 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). Here, Plaintiff has failed to allege any actual injury. Accordingly, the claim of inadequate access to a law library will be dismissed.

### 4. Conditions in Infirmary

Plaintiff alleges that while in the infirmary for 28 days he was unable to make telephone calls, mail letters, or purchase commissary items.

A right to intimate association with family members has been held to derive from both the First Amendment right of association and the substantive protections of the Fourteenth Amendment's Due Process Clause. See, e.g., Roberts v. United States Jaycees, 468 U.S. 609, 617-20 (1984); Santosky v. Kramer, 455 U.S. 745, 753 (1982); Quilloin v. Walcott, 434 U.S. 246, 255 (1978); Moore v. City of East Cleveland, 431 U.S. 494 (1977). Many courts have recognized a liberty interest in familial relationships other than the parent-child relationship. See Trujillo v. Board of County Commissioners of the County of Santa Fe, 768 F.2d 1186, 1188-89 (10th Cir. 1985) (and cases cited therein).

"In the First Amendment context, ... a prison inmate retains those First Amendment rights [of freedom of speech and association] that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Pell v. Procunier, 417 U.S. 817, 822 (1974) (evaluating constitutionality of limiting one channel of communication with those outside of prison through review of adequacy of alternative channels of communication). See also Thornburgh v. Abbott, 490 U.S. 401 (1989) (evaluating regulations governing receipt of subscription publications by federal prison inmates). Cf., Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989) (there is no substantive due process right to "unfettered visitation"). Thus, to the extent not inconsistent with their status as prisoners or with legitimate penological objectives, inmates have a First Amendment right to communicate with "friends, relatives, attorneys, and public officials by means of visits, correspondence, and telephone calls." Owens-El v. Robinson, 442 F.Supp. 1368, 1386 (W.D. Pa.) (citation omitted), supplemented and finalized, 457 F.Supp. 984 (W.D. Pa. 1978), aff'd in part and vacated in part on other grounds sub nom., Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754 (3d Cir. 1979). See also, Bazzetta v. McGinnis, 2002 WL 529956 (April 10, 2002 6th Cir.) (prisoners retain a First Amendment right to non-contact visits with intimate associates, including minor siblings, nieces, and nephews, even while incarcerated).

When a prison regulation or practice impinges on inmates' or free citizens' speech and association rights, "the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). The

Supreme Court has identified four factors to be considered in determining the reasonableness of the regulation or practice at issue.

> First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. ... Thus, a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational.   Moreover, the governmental objective must be a legitimate and neutral one.   ...
>
> A second factor relevant in determining the reasonableness of a prison restriction ... is whether there are alternative means of exercising the right that remain open to prison inmates.   ...
>
> A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally.   ...
>
> Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation.   By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns.   This is not a "least restrictive alternative" test.   ...

Turner, 482 U.S. at 89-90   (citations omitted).

Here, it is not possible to determine from the Complaint whether the institutional policy prohibiting use of the telephone or outgoing mail during an infirmary stay meets the Turner reasonableness test.   Accordingly, this claim will be permitted to proceed as against Governor Corzine, who was allegedly notified of the "problems," and the Corrections Defendants.

The allegation of a constitutional violation arising out of the 28-day denial of commissary privileges associated with the infirmary stay, however, fails to allege a violation of any constitutional right.   This short-term deprivation of commissary rights, as alleged, fails to constitute denial of any of life's necessities, so as to state a claim

under the Eighth Amendment.  Accordingly, this claim will be dismissed without prejudice.

## V.  CONCLUSION

For the reasons set forth above, certain claims must be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.  An appropriate order follows.

s/ Katharine S. Hayden

_____
Katharine S. Hayden
United States District Judge

Dated: November 5, 2007