**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| VINCENT GLAZEWSKI,<br><br>                 Plaintiff,<br><br>     v.<br><br>JON CORZINE, GEORGE HAYMAN, JAMES F. BARBO, LYDELL SHERRER, ANGEL SANTIAGO, SR., ERIC STOKES, DEAN YATAURO, RANDY CICALE, JOSEPH L. TRAPP, STEVEN LA PENTA, PAUL DUNN, CHARLES SIMPKINS, FRANKIE JAMES, JOHN CHANDA, GARY COOK, BEN GAMBLE, CHARLES JACKSON, ZAKIA TWEEDY, ERIC WINGO, REGINALD FRAZIER, KEITH DAVIS, ERIC WILLIAMS, NORWOOD THOMPSON, TIMOTHY FATE, WENDELL SMITH, MAHMOUD ELDEKKI, C. IFFEL, JOHN GODINSKY, M.D., NARSIMHA REDDY, M.D., JOHN HOCHBERG, M.D., SCOTT ORLANSKI, ALBERT LEWIS, and JANE DOES 1 – 10,<br><br>                 Defendants. | Civ. Action No. 06-4107  (KSH)<br><br><br><br><br>__OPINION__ |

__KATHARINE S. HAYDEN, U.S.D.J.__

### I.  Introduction

On August 30, 2006, plaintiff Vincent J. Glazewski filed this civil rights action under 42 U.S.C. § 1983 claiming that his constitutional rights were violated through the actions and inaction of various New Jersey public officials, New Jersey Department of Corrections officials, and prison employees while he was housed at Northern State Prison ("NSP").  [D.E. 1.]  He amended his complaint on November 29, 2007 to add more NSP officials and certain prison

1

medical service providers as defendants.  Before the Court are two motions for summary judgment as to Glazewski's amended complaint that have been separately filed by the named state[1] and medical[2] defendants.  [D.E. 228 and 238.]

## II.  Standard of Review

Pursuant to Federal Rule of Civil Procedure ("FRCP") 56(c), a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

On these summary judgment motions, the record consists of:  copies of the New Jersey Department of Corrections face sheet and progress notes on Glazewski; NSP administrative remedy forms submitted by Glazewski between January 9, 2004 and March 1, 2008; a transcript of Glazewski's deposition taken on November 6, 2008 and continued on December 11, 2008; written correspondence between Glazewski and multiple prison administrators at NSP; and Glazewski's medical records for the period between August 2004 and November 2007.  The medical records include doctors' notes on consultations with Glazewski, laboratory test results, doctors' prescriptions, prison documents detailing administration of the prescriptions, and consent refusal forms Glazewski filled out concerning medication or doctor visits that he refused.

---

[1]  Glazewski names Governor Jon Corzine and Commissioner of Corrections George Hayman as defendants, as well as various NSP employees.  These employees are: James Barbo, Lydell Sherrer, Angel Santiago, Jr., Eric Stokes, Dean Yatauro, Randy Cicale, Joseph Trapp, Steven LaPenta, Paul Dunn, Charles Simpkins, Frankie James, John Chanda, Gary Cook, Ben Gamble, Charles Jackson, Zakia Tweedy, Eric Wingo, Reginald Frazier, Keith Davis, Eric Williams, Norwood Thompson, Timothy Fate, Wendell Smith, Mahmoud Eldekki, Albert Lewis, and Ralph Woodward (hereinafter, these defendants will be collectively referred to as the "state defendants").

[2]  These defendants named by Glazewski, hereinafter known as the "medical defendants," are Drs. John Hochberg, John Godinsky, and Niranjana Shah.

Fed. R. Civ. P. 56(e)(2) states: "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading."  In applying this rule, New Jersey Local Civil Rule (L. Civ. R.) 56.1(a), as amended in 2008, requires that both the moving and non-moving parties furnish a statement identifying material facts so that the Court can determine if a genuine dispute exists.

Thus, once the defendants have submitted moving papers, along with the requisite Rule 56.1(a) statement, the burden shifts to the non-moving party to "furnish, with its opposition, papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement and disagreement . . ."  L. Civ. R. 56.1(a).  The state defendants and medical defendants each submitted a Rule 56.1 statement with their respective moving papers.  [*See* D.E. 228, attachment 3; D.E. 238, attachment 3.]  Furthermore, as the commentary accompanying L. Civ. R. 56.1(a) states, "[t]he 2008 amendments . . . made it clear that there are serious consequences when parties fail to comply with the mandates of the rule."  The consequence most relevant here is that "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion."  Glazewski responds to the medical defendants' Rule 56.1(a) statement, but in significant contrast, he does not respond to the statement submitted by the state defendants.  As such, because he failed to respond, the Court is entitled to treat the state defendants' Rule 56.1(a) statement as uncontroverted.  Importantly, plaintiff's pro se status does not absolve him of the requirement of filing a proper opposition. "Even as to a pro se litigant, failure to file a counterstatement or response to an adversary's Rule 56.1 statement may result in a judicial assumption that the pro se litigant does not dispute the adversary's version of the facts."  *See, e.g.*, *Hooten v. Schaaff*, 2008 U.S. Dist. LEXIS 34193

(D.N.J. Apr. 24, 2008) (Kugler, J.).  Accordingly, the Court will assume that Glazewski accepts the state defendants' version of the facts in its Rule 56.1 statement.

### III.   Factual Background

Vincent Glazewski is a state prisoner who has been housed at South Woods State Prison ("South Woods") since December 2007.  (Deposition of Vincent Glazewski ("Glazewski Dep."), 29:11-13.)  In 1993, he began serving a sentence of 35 years for a variety of offenses with a stipulated 15 year term.  (Glazewski Dep. 44:9-49:19.)  According to his deposition testimony, he is eligible for parole on August 13, 2013.  (*Id.* 49:21-50:1.)  Glazewski began his sentence at Camden County Jail in 1993 where he remained for approximately 47 days.  (*Id.* 54:5-16.)  After being transferred to multiple prisons over the next several years, he was moved to Riverfront State Prison ("Riverfront") on November 17, 1998, where he remained for approximately five years.  (*Id.* 55:14-58:2.)

#### i.   Medical History and Treatment

Prominently at issue in this lawsuit is Glazewski's medical treatment while incarcerated at NSP.  Inmates at NSP are not treated by NSP employees, but are instead under the care of Corrective Medical Services ("CMS") personnel.  (Declaration of Christina Prestien-LaPaenta, ("LaPenta Decl."), 2–3.)  Although Glazewski did not develop any medical conditions at NSP, it is relevant to examine what the record reflects about the genesis of his medical issues, which began before he was transferred to the prison in 2003.

While still in custody at Riverfront, Glazewski's medical records show that he first began experiencing medical problems on about February 17, 2002, when he was seen by RN Rosales because of complaints of a hematoma on his left thigh that was increasing in size.  (Certification of Stephen Holtzman ("Holtzman Cert."), Exh. B, 24.)  After subsequent lab reports showed

elevated levels of white blood cells and low levels of red blood cells, on or about April 12, 2002, Dr. Wojceiech Gorczyka diagnosed him with chronic myelogenous leukemia ("CML"). (Holtzman Cert., Exh. C, 42.)  The diagnostic records also show that on both April 23 and May 7, 2002, Glazewski had additional lab work done.  (*Id.* 44, 46.)  On May 10, 2002, his medical records illustrate that Glazewski was seen at Riverfront's Oncology Chronic Care Clinic by Dr. Ronsayro.  (Holtzman Cert., Exh. B, 71.)  Glazewski's consultation records further indicate that he was then brought to St. Francis Medical Center ("St. Francis") for a hematology consult on May 21 of that year (Holtzman Cert., Exh. B, 82–84; Exh. D, 13), where the doctors confirmed the CML diagnosis, recommended a bone marrow transplant consultation, and prescribed him Gleevec, a drug used in the treatment of CML.  (Holtzman Cert., Exh. D, 16.)

Glazewski testified that his doctors instructed him to ingest 400 milligrams of Gleevec daily.  (Glazewski Dep. 126:6-10.)  His medication administration records show that he received his prescribed medication in both May and June 2002.  (Holtzman Cert., Exh. E, 32, 34.)  As his consultation records reflect, after additional lab work was performed and a bone marrow transplant was conducted at Hackensack Medical Center on July 25, 2002, Dr. Scott Rowley advised that stem cell transplantation was not recommended as front line therapy, although he recommended that it should be considered if the disease progressed.  (Holtzman Cert., Exh. D, 20, 22.)  Dr. Rowley also recommended that Glazewski continue taking Gleevec.  (*Id.*)  Notes on later consultation records suggest that, on or about August 9, 2002, Glazewski was transported to St. Francis for a visit with Dr. Abdul Mughal, who assessed that Glazewski was "doing well on Gleevec."  (*Id.* 30.)

Glazewski's medical records illustrate that over the next five months, he had laboratory tests conducted on him on at least 20 dates, he attended monthly hematology consults at St.

5

Francis, and he received the prescribed dosages of Gleevec.  (*See generally*, Holtzman Cert., Exhs. C, D, E.)  On or about January 14, 2003, notes on his medical records show that Dr. Rowley believed Glazewski to be in cytogenic remission and, as a result, he recommended that his treating physicians should not proceed with bone marrow transplantation.  (Holtzman Cert., Exh. B, 241.)

Thereafter, from January to December 2003, Glazewski's medication administration and consultation records indicate that he continued to take Gleevec and undergo laboratory tests (*see generally*, Holtzman Cert., Exhs. D, E), and his diagnostic records for that time show no evidence of residual leukemia.  (Holtzman Cert., Exh. C, 105.)  Glazewski testified that on December 9, 2003, he was transferred from Riverfront to NSP, where he remained until December 17, 2007 and was held during all relevant times of this litigation.  (Glazewski Dep. 58:4-16.)

While at NSP, according to a prison medical refusal form that he signed, on or about January 23, 2004, Glazewski refused an evaluation at St. Francis Medical Center.  (Holtzman Cert., Exh. F, 15.)  Glazewski admits that he did not want to be evaluated on that date by Dr. Muglah because, as he wrote on the consent form, "I had a problem with this hospital and the doctor who is going to see me!  He put me in pain and it <u>will</u> not happen again!"  (*See* Holtzman Cert., Exh. F, 15 (emphasis in original.))  On February 19, 2004, as shown in his medical documents, Glazewski refused blood work which was to have been conducted by a NSP nurse.  (Holtzman Cert., Exh. B, 424.)  Consent refusal forms and his medical records reveal that he subsequently refused a bone marrow biopsy on April 5, 2004 and blood work on June 27, 2005.  (Holtzman Cert., Exh. F, 17; Exh. B, 713.)  Despite the occasional refusal, the substantial volume of documentary evidence submitted by the medical defendants establishes that

6

Glazewski received medical treatment during his confinement at NSP, reflecting at least 43 blood tests between December 29, 2003 and September 5, 2008 and 14 consultations between January 23, 2004 and August 9, 2008.  (*See generally*, Holtzman Cert., Exhs. B, F.)

Moreover, Glazewski does not dispute that he was offered his prescribed medication in the months between January 2004 and March 2004 without incident.  (*See* Pl.'s Resp. to Medical Defs.' Facts ¶¶ 67, 69.)  On March 19, 2004, as evidenced by a medical consent form, Glazewski refused his monthly dosage of Gleevec because, as he stated, "an oncologist ordered this medication in 100 mg tablets not in 400 mg tablets [and] I cannot adjust my medication." (Holtzman Cert., Exh. F, 16.)  Prior to that date, his medication administration records suggest that Riverfront and NSP officials had been ordered to fulfill his Gleevec prescription in quantities of four 100 milligram tablets per day as opposed to the one 400 milligram pill dosage that he was offered on March 19.  (*See generally*, Holtzman Cert., Exh. E.)  It is apparent from the consent forms that Glazewski believed such a change in his medication was unacceptable; however, he does not specify which oncologist allegedly ordered the specific dosage of four 100 milligram tablets per day and the medical records submitted on this summary judgment motion do not contain any doctor's instructions so indicating.  Nevertheless, notes on his consultation records indicate that Glazewski voluntarily ceased taking the medication offered to him for 50 days (Holtzman Cert., Exh. D, 80).  In June 2004, the pertinent medication administration form shows that NSP officials changed his dosage back to four 100 milligram tablets and he began to accept his medication once again.  (Holtzman Cert., Exh. E, 100.)

Thereafter, subsequent medication administration records demonstrate that Glazewski received his medication in every month that he was housed at NSP.  (*See generally*, Holtzman Cert., Exh. E.)  Despite his prior refusal to take Gleevec in the form of one daily 400 milligram

tablet, those documents also show that after June 2004, defendants Godinsky and Shah interchangeably prescribed each type of dosage, both of which Glazewski accepted.  (*See, e.g.*, Holtzman Cert., Exh. E, 164).

On October 29, 2006, in a letter to Governor Corzine, Glazewski detailed an altercation he had with Dr. Shah.  (Cardwell Decl., Exh. B, 38.)  Glazewski wrote,

> On this date I was seen by a foreign speaking doctor, who barely speak [sic] english or even understood english.  I do not have a choice of medical doctors that I would like to seen [sic] by, so if these people cannot be courteous or helpful to my specific needs then I really do not need to see them. . . .  [I]f this is not corrected and if I do not receive a formal apology I will be amending the lawsuit I have already filed with the Federal Court to include CMS and the employees that I feel are in violation of my civil rights as a patient and hindering me from becoming healthy by denying me adequate medical attention.

(*Id.*)

On November 28, 2006, Glazewski wrote a letter to Defendant Dr. Woodward of the New Jersey Department of Corrections, in which he stated in reference to Dr. Shah, "I do not like this person not even a little bit.  I do not want to be seen by her ever again, I think she got her medical degree from a bubble gum machine.  She is very disrespectful, and her lack of human compassion is unequaled to anything I have ever experienced."  (*Id.* 40–41.)  Although Dr. Shah's consultation notes for that day do not state what exactly occurred between them, the document indicates that Glazewski refused to be treated by Dr. Shah or have his blood taken at his scheduled appointment.  (Holtzman Cert., Exh. B, 832.)  Despite the October 29, 2006 incident, in the following months, Glazewski's medical records reveal that Dr. Shah continued to prescribe him Gleevec for his treatment.  (*See e.g.*, Holtzman Cert., Exh. B, 864.)

On or about November 30, 2006, consultation records show that Glazewski was once again evaluated by Dr. Rowley at Hackensack University Medical Center, where the doctor noted that he responded well to his daily 400 milligram dosage of Gleevec and "strongly

recommend[ed] the medication be continued and that he remain compliant to this regimen."
(Holtzman Cert., Exh. D, 93–95.)  On December 17, 2007, his medical records indicate that he
was transferred to South Woods where his treatment continued.  (Holtzman Cert., Exh. B, 918.)

At his deposition, Glazewski testified that he is no longer in remission, but he admits that
he has not been told that by any doctor.  (Glazewski Dep. 102:6-25.)  To the contrary, as shown
in the latest consultation report included in the record, on May 30, 2008, Dr. Mughal assessed
that for a patient with CML, Glazewski was doing "very well."  (Holtzman Cert., Exh. G, 46.)

Additionally, Glazewski testified that CMS doctors at NSP prescribed a low-fat, low-
sodium medical diet due to his health issues.  (Glazewki Dep. 328:17-21.)  Between January 14,
2004 and March 4, 2008, Glazewski submitted 24 administrative remedy forms claiming that he
either did not receive the correct meal or that he was given an incomplete portion. (*See* Brooks
Decl, Exh. B.)  In none of those forms, however, did he allege that any defendant interfered with
his receipt of his medical diet.  (*Id.*)  The forms do show that each time he requested assistance
related to his meal, staff at NSP addressed his concerns.  (*See id.*)  Furthermore, Glazewski
testified that he believed that he did not receive his meals because they were either stolen by
inmates or not made by food services.  (Glazewski Dep. 335:22-336:3.)  He did not indicate at
his deposition that he believed any of the defendants were responsible for his meal not being
provided to him properly.  (*Id.*)  Further, he testified that "a lot" of the missing meals were
remedied at the time he addressed them to NSP staff.  (*Id.* 335:8-13.)

### ii. Prison Conditions

Glazewski claims that the state defendants confined him under unconstitutional living
conditions at NSP.  (*See* Am. Compl.)  First, he claims that he was unconstitutionally subjected
to second hand smoke by being housed in cells with smokers.  (*See id*.)  During his time at NSP,

he filed five administrative remedy forms complaining of smoking in his unit.  (*See* Cardwell Decl., Exh. B.)   He also sent multiple letters to the offices of Governor Corzine and Commissioner Hayman making similar complaints.  (*See id.*)  On behalf of Governor Corzine and Commissioner Hayman, on March 8, 2006, NSP Administrator Lydel Sherrer wrote a response letter to Glazewski stating that

> By copy of this memo, your concerns regarding your cellmate have been referred to Sergeant James for review and appropriate monitoring
> . . . .
> As you have been advised before, you are again being reminded to report any violations of the Smoking Policy to your assigned Housing Officer, and follow the chain of command from there via the Inmate Remedy System.

(*Id.* 27.)

Glazewski testified that the inmates knew they were not allowed to smoke in their cells and that they hid their smoking from Defendants.  (Glazewski Dep. 248:7-249:12.)  He also admitted that none of the state defendants ever witnessed any of his cell mates smoking in the cell because they hid their smoking.  (*Id.*)  Furthermore, prison records show that Glazewski's cell reassignments directly correspond to the dates on which he requested relief (Brooks Decl., Exh. A, 21–22), and it is undisputed that these transfers were made in order to remedy his complaints.  (*See* State Defs.' Facts ¶ 20 (*citing* Brooks Decl. Exh. A, 21–22.))  For example, on May 24 and October 17, 2006, Glazewski filed administrative remedy forms regarding his concern about being housed with a smoker and according to prison records, on May 24 and October 25, 2006, NSP officials transferred him to a different cell.  (*Id.* ¶ 22.)

Glazewski also alleges that defendant Chanda placed him on a top bunk despite the fact that he was medically restricted to a bottom bunk assignment.  (Glazewski Dep. 181:12-16.) Chanda informed him that he needed to renew his medical slip so that he could be moved to a

bottom bunk.  (*Id.* 182:8-11.)  Upon renewing his medical slip, he was placed on a bottom bunk the same day.  (*Id.* 182:21-183:4.)

Based upon two incidents where he was assaulted by gang members, Glazewski also alleges that the state defendants failed to protect him from other inmates. (Glazewski Dep. 185:13-15.)  He states that he was first assaulted on or about December 1, 2005 by Latin Kings gang members.  (*Id.* 348:14-351-14.)  Glazewski admits that he never reported the incident to medical staff or any other NSP officials.  (*Id.* 351:3-16.)  He testifies that after the assault, "I never had another physical altercation [with the Latin Kings], there was [sic] glares and remarks made, but nothing more than that."  (*Id.* 350:20-24.)

Glazewski further testified about an assault by members of the Bloods gang.  (*Id.* 185:13-15.)  He admits that he did not inform any defendants that he feared being assaulted in advance of this incident, and that he had not had any previous physical altercations with Bloods members. (*Id.* 185:13-15; 346:11-14.)  After that assault, Glazewski testified that he reported the incident (*id.* 344:14-20), and, in response, prison officials placed him in Temporary Closed Custody, and the Special Investigation Division interviewed him.  (*Id.*)  On February 22, 2007, Glazewski sent a letter to Administrator Sherrer stating that he had been assaulted "within a months [sic] period" of the letter date, and he requested that NSP officials protect him from gang members.  (Cardwell Decl., Exh. B, 51.)  In the letter, he did not indicate that he had informed any defendant that he feared an assault prior to it occurring, and he acknowledged the prison officials' actions in response to the incident.  (*Id.*)  He testified that after his assault by the Bloods, he did not have any subsequent physical altercations with any gang members.  (Glazewski Dep. 346:7-14.)

He also asserts that the conditions of NSP were unclean and that defendant Cook failed to give him an appropriate amount of cleaning supplies or properly supervise the cleaning of the

prison unit.  (*Id.* 187:19-25.)  Later in his deposition, however, he testified that each inmate was responsible for cleaning his own cell.  (*Id.* 243:24-244:1.)  He also admitted that each housing unit was given cleaning supplies each week.  (*Id.* 245:3-9.)

Finally, Glazewski filed administrative remedy forms related to property that he claims he was wrongly deprived of while housed at NSP. (*See generally*, Am. Compl.; *see also*, Cardwell Decl., Exh. B, 25.).  In written responses, such as a January 11, 2006 letter from Administrator Sherrer, Glazewski was advised that administrative remedy forms or written letters were an improper method of alleging lost, stolen, or damaged property.  (*See* Cardwell Decl., Exh. B, 25.)  Sherrer instructed him that he was required to fill out a property claim form so that an investigation on the property allegations may commence.  (*Id*.)   It is unclear from the record whether Glazewski ever filed a property claim form or instituted any legal actions in a New Jersey court.

## IV.   Discussion

Glazewski brings the instant suit under 42 U.S.C. § 1983, which gives a cause of action to an individual whose constitutional or federal rights are violated by those acting under color of state law.  To establish a colorable § 1983 claim, a plaintiff must show that "'the conduct complained of was committed by a person acting under color of state law'" and that "'this conduct deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States.'"  *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993) (*quoting Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)).

In this action, Glazewski alleges that the state defendants violated his rights under the Eighth and Fourteenth Amendments.   As the Court is best able to construe Glazewski's

amended complaint, consisting of 77 pages and 300 numbered paragraphs, the state defendants violated the Eighth Amendment by: (1) failing to protect him from assaults from other prisoners; (2) confining him in inhumane living conditions; and (3) providing him inadequate medical treatment by failing to provide his prescribed meals and drugs.  As for the alleged Fourteenth Amendment violation, he claims that the state defendants deprived him of due process by impermissibly seizing his property.  (*See id.*)  Glazewski's only claim against the medical defendants pertains to their alleged failure to provide him with constitutionally adequate medical treatment in violation of the Eighth Amendment.

### A.  Eighth Amendment Claims

In all claims alleging cruel and unusual punishment under the Eighth Amendment, an inmate must show both an objective and a subjective component.  *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Thus, the inmate must show that the conditions alleged, either alone or in combination, deprived him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety.  *See Rhodes v. Chapman*, 452 U.S. 337, 347–48 (1981).  To the extent that certain conditions are "restrictive" or "harsh," they are deemed to be part of the penalty that criminal offenders pay for their offenses against society.  *See id.* at 347.  Only "extreme deprivations" are sufficient to make out an Eighth Amendment claim.  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Additionally, the inmate must fulfill the subjective element by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety."  *Ingalls v. Florio*, 968 F. Supp. 193, 198 (D.N.J. 1997).

### 1.  Medical Conditions

Glazewski asserts that he received inadequate or delayed medical care from both the state and medical defendants in violation of his Eighth Amendment rights.  He argues that because dispensation of his medication was delayed, he is no longer in remission from leukemia.  (Pl.'s Opp. to Medical Defs.' Br. 7.)

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976); *Rouse v. Plantier*, 182 F.3d 192 (3d Cir. 1999).  For an inmate to be successful in an Eighth Amendment inadequate medical care claim, he must demonstrate that the defendants showed a "deliberate indifference to his serious medical needs."  *Estelle*, 429 U.S. at 104.  To do so, he must make: (1) an "objective" showing that the deprivation was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious; and (2) a "subjective" showing that defendant acted with "a sufficiently culpable state of mind." *Thomas v. Dragovich*, 142 F. Appx. 33, 36 (3d Cir. 2005) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  There is little doubt that Glazewski's diagnosis of CML constitutes a serious medical need.

In addressing the subjective prong, the Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. *See Rouse*, 182 F.3d at 197 (deliberate indifference may be demonstrated by intentionally denying, delaying or preventing a prisoner from receiving needed or recommended medical treatment).  The court has also held that needless suffering resulting from the denial of simple medical care, which does not

serve any penological purpose, violates the Eighth Amendment.  *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003).

But mere negligence does not violate the Eighth Amendment, *see Estelle*, 429 U.S. at 106, nor does an inmate's "disagreement with a doctor's professional judgment [] state a violation of the Eighth Amendment."  *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990).

### a. Medical Claims against State Defendants

With respect to his claims of allegedly inadequate medical treatment, Third Circuit precedent forecloses the availability of such an action against the state defendants, all of whom are non-medical personnel.  *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official cannot be found liable for deliberate indifference.").  In a case similar to the one at bar, in *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993), the Third Circuit was presented with an appeal from a district court's grant of summary judgment on an inmate's deliberate indifference to medical needs claim against medical and non-medical personnel.  In affirming the lower court's dismissal of the claim against the non-medical personnel, the Third Circuit held that

> The only allegation against either of these two [non-medical] defendants was that they failed to respond to letters [plaintiff] sent to them explaining his predicament. Neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.

*Id.* at 69.

The Third Circuit reapplied its holding in *Durmer* when it decided in *Spruill* that a prison official cannot be held liable for deliberate indifference to a prisoner known to be under the

treatment of a prison doctor absent sufficient evidence that the official intended the inadequate treatment. *Spruill*, 372 F.3d at 236.

Here, although Glazewski alleges that he did not receive sufficient care, he admits that he did in fact receive medical care and treatment.  Further, like defendants in *Spruill* and *Dormer*, the state defendants are not physicians and are held to a standard requiring that only if they had reason to believe that the CMS physicians were mistreating Glazewski did they have to take action.   Because it is undisputed that Glazewski was under the care of CMS medical professionals and he has adduced no evidence showing that the state defendants knew of mistreatment, they cannot be held liable for deliberate indifference to his medical needs.

Moreover, the record does not contain sufficient evidence to show that the state defendants were deliberately indifferent to his medical needs in providing him with his medical diet.  As NSP administrative remedy forms included in the record indicate, Glazewski filed 24 remedy forms related to his medical diet.  (*See* Brooks Decl., Exh. B.)  The forms show that prison officials provided a written "administrative remedy response" on each form.  The forms were returned to Glazewski, giving him information about what measures were taken in response.  Significantly, Glazewski testified during his deposition that "I don't know the exact number, but I'm going to tell you a lot of [the complaints]" were remedied.   (Glazewski Dep. 335:14-18.)  It is not incumbent upon the Court to determine which ones were not remedied, if any, or why, or the significance of any inaction, when Glazewski himself fails to do so.  He stated that he believed that he did not receive the meals because they were either stolen by other inmates or not made by food services.  (*Id.*)   Glazewski does not adduce evidence that any of these defendants directly interfered with, or were deliberately indifferent to, his receipt of his

medical diet.   Accordingly, summary judgment is granted as to the claim that the state defendants were deliberately indifferent to Glazewski's medical needs.

### b. Claim against Medical Defendants

Glazewski claims that the medical defendants were deliberately indifferent to his serious medical condition.   He complains that Dr. Hochberg ordered an AIDS test without seeing him. (Am. Compl. ¶ 176.)   He alleges that on or about October 26, 2006, Dr. Shah refused him care when he arrived for a "chronic care check up."   (Am. Compl. ¶ 150)   Glazewski testified at his deposition that Dr. Shah "threw me out of her office twice.     There was no conversation, basically, with her.   [Because] I guess she didn't like [ ] me."   (Glazewski Dep. 71:15-19.)   He makes no specific allegations in his complaint or his deposition pertaining to Dr. Godinsky.

The extensive medical record before the Court indicates that Glazewski has failed to support his claims against the medical defendants.    His medical records reflect that Glazewski underwent diagnostic tests, received medication, and was provided numerous oncology and bone marrow transplant consultations and evaluations.   (*See generally*, Holtzman Cert., Exhs. B, C, D, E, F.)   In fact, he received at minimum 43 blood tests between December 29, 2003 and September 5, 2008, as well as 14 consultations between January 23, 2004 and August 9, 2008. (*See id*.)  With respect to the individual conduct of Drs. Hochberg, Shah, and Godinsky, medical records  show  that  each  had,  on  more  than  one  occasion,  individually  consulted  with  and conducted laboratory tests on Glazewski, and prescribed his recommended dosage of Gleevec during his time at NSP.   (*See*, Holtzman Cert., Exhs. E, F.)   Dr. Shah continued to prescribe him medication for his treatment after the October 29, 2006 incident occurred between them.   (*See* Holtzman Cert., Exh B, 846.)   Dr. Hochberg's decision to order an AIDS test does not constitute

support for Glazewski's claim that Hochberg intentionally denied, delayed or prevented him from receiving any needed medical treatment. *See Rouse*, 182 F.3d at 197.

Finally, the record before the Court indicates that the only extended period of time when Glazewski was not taking medication occurred when he refused it for 50 days because CMS doctors prescribed him one 400 milligram Gleevec pill, as opposed to four 100 milligram pills. (*See* Holtzman Cert., Exh. D, 80.)   Glazewski has not adduced evidence that the dosage he objected to was contrary to medical protocol, and even if he had, this would amount to negligence without more.  An inmate's disagreement with the exercise of medical judgment by medical personnel does not, on its own, constitute a viable claim for relief.  *See Hampton*, 546 F.2d at 1080.  The fact that Glazewski did not take his medication for over 50 days does not support a claim that the medical defendants acted with a sufficiently culpable state of mind. *See Thomas*, 142 F. Appx. at 36.

Accordingly, the Court finds that Glazewski has failed to establish that the medical defendants were deliberately indifferent to his medical needs, and that the records of their continuous treatment, evaluation, and provision of medication indicates he was provided medical treatment consistent with his constitutional rights.  Glazewski has testified that his only claim against medical defendants is that they were deliberately indifferent to his medical needs in violation of his Eighth Amendment rights.  (Glazewski Dep. 129:20-130:3)  Accordingly, the Court grants the medical defendants' motion for summary judgment in their favor.

## 2.  Failure to Protect Claim

Glazewski claims that the state defendants violated his Eighth Amendment rights because they failed to protect him from assaults by other inmates.  (Glazewski Dep. 185:13-15.)  To establish a failure to protect claim, an inmate must show (1) that "he is incarcerated under

conditions posing a substantial risk of serious harm"; and (2) a prison official acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Glazewski has adduced no evidence showing that the state defendants were aware of the threat of assault prior to the two incidents where he was assaulted by the Latin Kings or Bloods gang members. He has failed to oppose defendants' contention that "he did not inform [the state defendants] of the assault[s] prior to [them] occurring," (State Defs.' Facts ¶ 30), in a rule 56.1 counterstatement of undisputed facts. Glazewski admitted that he never reported the December 1, 2005 assault by Latin Kings gang members to medical staff or any other NSP officials. (Glazewski Dep. 351:3-16.) He also testified that prior to, and after, the assault, he did not experience any other physical attacks from members of the Latin Kings. (*Id.* 350:20-24.) He admitted that he never forewarned any defendants that he feared being assaulted by a member of the Bloods, and that he never experienced any physical altercations with the Bloods before they attacked him. (*Id.* 185:13-15; 346:11-14.) Glazewski's testimony indicates that in response to the assault by Bloods, NSP officials placed him in Temporary Closed Custody and the prison's Special Investigation Division conducted an investigation. (*Id.*) After he wrote on February 22, 2007 to Administrator Sherrer (Cardwell Decl., Exh. B, 51), Glazewski testifies that he did not suffer subsequent attacks from any gang members. (Glazewski Dep. 346:7-14.)

Because Glazewski has not adduced evidence that any state defendant knew of and disregarded a serious risk of harm before he was assaulted, he has failed to meet the "deliberate indifference" prong necessary for an Eighth Amendment claim. As such, summary judgment is proper on Glazewski's failure to protect claim.

### 3.  Conditions of Confinement Claim

Glazewski also claims that the state defendants subjected him to inhumane living conditions violative of the Eighth Amendment because they allegedly exposed him to second hand smoke by placing him in cells with smokers, confined him in an unclean prison, and assigned him to a top bunk when he was medically restricted to bottom bunk placement only. (*See* Am. Compl.)  What constitutes living conditions that violate the cruel and unusual punishment clause is determined by "the evolving standards of decency that mark the progress of a maturing society." *Rhodes*, 452 U.S. at 346.  As he is required in his other Eighth Amendment claims, to bring a meritorious claim for inhumane conditions of confinement, Glazewski must show that the living conditions are cruel and that the conditions exist as a result of deliberate indifference by prison officials. *Wilson v. Seiter*, 501 U.S. 294 (1991).

With respect to the cleanliness of the prison, Glazewski admits at his deposition that the inmates themselves were responsible to maintain the cleanliness of their cells and that supplies were distributed by NSP staff to inmates to clean their cells.  (Glazewski Dep. 243:24-244:1.) As for the second-hand smoke, Glazewski acknowledges that his cell mates hid their smoking from NSP corrections officers and no officer caught any of his cell mates smoking in their cell. (*Id.* 248:7-249:12.)  Moreover, NSP officials moved Glazewski to a new cell whenever he complained of being housed with a smoker.  (*See* Brooks Decl., Exh. B.)  Finally, while Glazewski alleged that defendant Chanda placed him on a top bunk even though he was medically restricted to a bottom bunk (Glazewski Dep. 181:12-16.), he testified that after he renewed his medical slip, NSP officials placed him on a bottom bunk the very same day.  (*Id.* 182:21-183:4.)  The Court finds that he has not provided any evidence that could raise a genuine issue of material fact regarding the allegedly unconstitutional conditions of his confinement. The

record shows that the prison complied with constitutional standards at a basic level, and responded to his complaints.   As such, he does not provide any evidence from which a reasonable jury could conclude that his health and safety were at risk.  *See Hassine v. Jeffes*, 846 F.2d 169, 174–75 (3d Cir. 1988).

### B.  Fourteenth Amendment Property Claim

Glazewski's claim that NSP officials impermissibly deprived him of his property must also be dismissed.  As the Third Circuit recently held, "a prisoner's cause of action based on unauthorized deprivation of property by a state actor is not actionable under section 1983 unless there is no adequate post-deprivation remedy available." *Laufgas v. Speziale*, 263 F. Appx. 192, 198 (3d Cir. 2008) (*citing Parratt v. Taylor*, 451 U.S. 527, 542 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)).  Glazewski failed to show that a conversion claim under state law would have provided him an inadequate remedy to address his alleged harm, or that he attempted to remedy the situation by properly filling out property forms related to his property claims.  (*See* Cardwell Decl., Exh. B, 25.)  In addition to those remedies, New Jersey law also provides a post-deprivation remedy for unauthorized deprivation of property by public employees. *See* New Jersey Tort Claims Act, N.J.S.A. §§ 59:1-1, *et seq.* (2001).  Accordingly, because multiple post-deprivation remedies were available, summary judgment is appropriate for Glazewski's Fourteenth Amendment claim against all state defendants.

### V.  Conclusion

For the foregoing reasons, the Court finds that summary judgment is appropriate for each of Glazewski's claims under § 1983 for alleged violations of the Eighth and Fourteenth

Amendments.   Accordingly, all claims against the state defendants and the medical defendants are dismissed.  An appropriate order will be entered.


/s/Katharine S. Hayden

Katharine S. Hayden, U.S.D.J.

Dated:  December 31, 2009